UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CONCERT HEALTH PLAN INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | 14 C 4697 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| JAMES E. KILLIAN, | ) | |
| | ) | |
| Defendant. | ) | |

## M<small>EMORANDUM</small> O<small>PINION AND</small> O<small>RDER</small>

In April 2014, Concert Health Plan Insurance Company sued James Killian in state court, alleging that he violated the Illinois insurance fraud statute, and Killian removed the case under the diversity jurisdiction. Doc. 1. Concert and Killian are no strangers, having spent the last seven-plus years in this court and the Seventh Circuit litigating an ERISA suit that Killian brought against Concert for allegedly breaching its obligation to pay for medical expenses incurred by his wife. *Killian v. Concert Health Plan Ins. Co.*, No. 07 C 4755 (N.D. Ill. filed Aug. 22, 2007) (the "2007 case"). Killian has moved to dismiss Concert's complaint under Rule 12(b)(6). Doc. 6. The motion is denied, although the portion of Concert's insurance fraud claim that is a compulsory counterclaim in the 2007 case is stayed.

## Background

In considering Killian's motion to dismiss, the court assumes the truth of the complaint's factual allegations, though not its legal conclusions. *See Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Concert's brief opposing dismissal, so

1

long as those additional facts "are consistent with the pleadings." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). The following facts are stated as favorably to Killian as those materials allow. *See Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012).

In 2007, Killian sued Concert under ERISA for payment of benefits, breach of fiduciary duty, and statutory penalties. *See generally Killian v. Concert Health Plan*, 742 F.3d 651 (7th Cir. 2013) (en banc) (describing the litigation). On July 31, 2006, about a year before bringing that suit, Killian sent Concert a letter requesting review of three insurance claims for treatment that his wife received at Rush University Medical Center. The letter stated that Killian's wife had been "referred to … Rush University Hospital through her Delnor Hospital stay and her family physician Dr. Philip Bradshaw," and that "[i]n calling your offices we were informed that Rush University … [was] in your network." Doc. 1-1 at p. 5, ¶ 4; *id*. at 8. Later, in various court filings and at the Seventh Circuit oral argument in the 2007 case, Killian and his lawyer represented that Rush had "continued to bill" Killian for medical services provided to his wife. *Id.* at p. 5, ¶ 6. The 2007 case remains pending, though the suit has been stayed as to the claims against Concert due to its state court liquidation proceedings. *Killian*, 07 C 4755, Doc. 491.

In the present suit, Concert claims that Killian's representations in the July 2006 letter, as well as his representations during the 2007 case, were false and misleading. Specifically, Concert alleges that "the treatment in question was (a) not a referral from Delnor Hospital or Dr. Bra[d]shaw; (b) Concert never told Defendant James E. Killian that treatment would be covered within Susan Killian's network; and (c) … Rush University … ha[s] not 'continued to bill' James E. Killian." Doc. 1-1 at p. 5, ¶ 7. The complaint seeks to hold Killian liable for these alleged misrepresentations under the Illinois insurance fraud statute, 720 ILCS 5/17-10.5(e) (previously codified at 720 ILCS 5/46-5(a)). *Id.* at p. 6, ¶¶ 10-13.

2

**Discussion**

For ease of exposition, the court first will consider Killian's statements in the July 2006 letter and then will turn to his statements during the 2007 case.

A.  **Statements in the July 2006 Letter**

Killian argues that the statute of limitations bars the portion of Concert's insurance fraud claim arising from his July 2006 letter. Doc. 6 at 1-3. The insurance fraud statute does not specify a limitations period for civil actions, and both parties agree that Illinois's five-year "catch-all" limitations period, *see* 735 ILCS 5/13-205 ("all civil actions not otherwise provided for[] shall be commenced within 5 years next after the cause of action accrued"), applies. Doc. 6 at 1; Doc. 34 at 3. The limitations clock under Illinois law starts when the plaintiff discovers or reasonably should have discovered the fraud. *See Halperin v. Halperin*, 750 F.3d 668, 671 (7th Cir. 2014) ("The statute of limitations does not begin to run until the wronged person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused.") (internal quotation mark omitted); *Khan v. BDO Seidman, LLP*, 977 N.E.2d 1236, 1242 (Ill. App. 2012) (same). Because Concert filed this suit on April 22, 2014, Doc. 1-1 at 4, its claim is untimely only if it knew or should have known earlier than April 22, 2009, of the fraud allegedly contained in the July 2006 letter.

The Seventh Circuit has held that "a motion to dismiss based on failure to comply with the statute of limitations should be granted only where the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense. … In other words, the plaintiff must affirmatively plead himself out of court; the complaint must plainly reveal that the action is untimely under the governing statute of limitations." *Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613-14 (7th Cir. 2014) (internal quotation marks and alterations

omitted); *see also Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (same). "Determining the point under the discovery rule at which the running of the limitations period commences is a question for the trier of fact, unless the parties do not dispute the facts and only one conclusion may be drawn from them." *Kedzierski v. Kedzierski*, 899 F.2d 681, 683 (7th Cir. 1990).

To show that Concert should have known before April 22, 2009 of the alleged fraud in the July 2006 letter, Killian points to a sanctions motion that Concert filed against him in the 2007 case on May 26, 2009. Doc. 6-1 (copy of the motion); *see United States v. Stevens*, 500 F.3d 625, 628 n.4 (7th Cir. 2007) (recognizing that orders entered and filings made in court are properly subject to judicial notice). According to the sanctions motion, Killian testified at his December 2008 deposition that "[t]he decision to see Dr. Bonomi at Rush Hospital was made by Mr. and Mrs. Killian without a referral by Delnor Hospital or Dr. Bradshaw," and that "[n]obody from Concert ever told Mr. Killian that Dr. Bonomi and Rush Hospital were members of Susan Killian's network." Doc. 6-1 at pp. 2-3, ¶¶ 7-8. Believing that this testimony fatally undermined Killian's July 2006 letter and also Killian's claims in the 2007 case, Concert asked the court to sanction both Killian and his lawyer for "failing to perform any investigation of the facts of this incident before filing suit." *Id.* at p. 6, ¶ 18.

Killian maintains that the sanctions motion shows that his December 2008 deposition gave Concert all the evidence it needed to allege that his July 2006 letter was fraudulent. Doc. 6 at 3. Concert concedes that Killian's December 2008 deposition testimony "certainly did raise concern," but says that it needed to "pursue[] additional documentation to determine the veracity of [Killian's] various representations" in order to be sure that fraud actually had occurred. Doc. 34 at 3-4. According to Concert, its fraud claim did not ripen until "as late as July of 2009,"

4

when it received additional "sworn testimony and subpoenaed records" that corroborated its suspicions. *Id*. at 4.

The July 2009 date is tough to swallow, as Concert believed it had enough facts at its disposal as of May 26, 2009 to move for sanctions. But even so, the court cannot tell on the pleadings at what point between December 2008 and May 26, 2009 Concert had grounds to believe that Killian's July 2006 letter was actionably fraudulent—in other words, to believe that the July 2006 letter was false and the December 2008 deposition testimony was true. And because a discovery date between April 22 and May 26, 2009 would make timely Concert's insurance fraud claim as it pertains to the July 2006 letter, the court cannot dismiss that claim on limitations grounds under Rule 12(b)(6).

Concert's May 2009 sanctions motion nevertheless poses a serious problem for that portion of Concert's insurance fraud claim, as Killian also seeks dismissal under Rule 13(a). Rule 13(a) says in relevant part: "A pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim: (A) arises out of the transaction or occurrence that is the subject matter of the opposing party's claim; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." Fed. R. Civ. P. 13(a)(1). Killian contends that Concert's fraud claim was a compulsory counterclaim that should have been brought in the 2007 case. Doc. 6 at 5.

The Seventh Circuit has adopted a "logical relationship" test to determine whether two claims arise from the same transaction or occurrence for purposes of Rule 13(a). *See Bd. of Regents of Univ. of Wis. Sys. v. Phoenix Int'l Software, Inc.*, 653 F.3d 448, 470 (7th Cir. 2011). The test requires consideration of "the totality of the claims, including the nature of the claims, the legal basis for recovery, the law involved, and the respective factual backgrounds." *Ibid*.

Concert's insurance fraud claim as it pertains to the July 2006 letter plainly arises out of the same general transaction as Killian's ERISA claims in the 2007 case—Killian's request for, and Concert's denial of, payment under his wife's insurance policy—and plainly implicates similar factual issues—what exactly Concert and Killian said to one another. Indeed, Concert does not dispute that its fraud claim is logically related to the 2007 case, Doc. 34 at 12, thereby forfeiting that particular point. *See Milligan v. Bd. of Trs. of S. Ill. Univ.*, 686 F.3d 378, 386 (7th Cir. 2012) ("As it turns out, Milligan did not make that argument, either here or in the district court. His failure to do so forfeits the argument.").

Concert argues, however, that it should be excused from Rule 13(a)'s compulsory counterclaim rule because it did not know it had been defrauded when it filed its answer in the 2007 case. Doc. 34 at 12. It is true that "Rule 13(a) does not require the defendant to file as a compulsory counterclaim a claim that hasn't accrued yet, either because it has not yet come into being or, though it has, the plaintiff could not have discovered it." *Allan Block Corp. v. Cnty. Materials Corp.*, 512 F.3d 912, 920 (7th Cir. 2008) (citations omitted). But the undisputed facts preclude Concert from benefitting from this principle. Killian filed his second amended complaint in the 2007 case on March 2, 2009. No. 07 C 4755, Doc. 134. When Concert answered that complaint on October 15, 2009, No. 07 C 4755, Doc. 235, it did not assert any counterclaims, even though—as the May 2009 sanctions motion plainly reveals—Concert had clearly come to believe months earlier that Killian had lied in his July 2006 letter. Thus, at the time it answered the second amended complaint in the 2007 case, Concert *had* discovered the factual basis for its insurance fraud claim as it pertains to the July 2006 letter.

In an effort to avoid this conclusion, Concert argues that in October 2009, it "did not have sufficient knowledge to bring forth a claim despite its exercise of due diligence and especially

6

given the pleading requirements under Rule 9(b) of the Federal Rules of Civil Procedure." Doc. 34 at 12. That argument fails to persuade. Concert admits here that it discovered that Killian's July 2006 letter was false "with the culmination of the sworn testimony and subpoenaed records, received as late as July of 2009." *Id.* at 4. And even putting aside that admission, Concert filed a sanctions motion against Killian—arguing that the July 2006 letter was knowingly false—in May 2009. If Concert thought it appropriate to seek sanctions against Killian in May 2009 for the allegedly false statements in his July 2006 letter, then it cannot plausibly contend that it was unsure about leveling essentially the same allegations against him in an insurance fraud counterclaim months later in October 2009. *Compare United States v. Oberhellmann*, 946 F.2d 50, 53 (7th Cir. 1991) ("Rule 11 of the Federal Rules of Civil Procedure provides mandatory sanctions for the signing of a knowingly false pleading"), *with* 720 ILCS 5/17-10.5(e)(1) (providing that "knowingly … attempt[ing] to obtain … control over the property of any insurance company by the making of a false claim" constitutes insurance fraud).

Nor do the pleading requirements of Rule 9(b) excuse Concert's failure to file a counterclaim in the 2007 case. Rule 9(b) requires a pleader to set forth the "who, what, when, where, and how" of an alleged fraud. *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013). Concert's May 2009 sanctions motion, filed months before its October 2009 answer, contained all that information: the who (Killian), the what (statements that his wife was referred to Rush and was told that Rush had in-network status), the when (July 2006), the where (Killian's letter to Concert), and the how (ditto). Given this, Concert's excuse for why it supposedly could not have filed an insurance fraud counterclaim in the 2007 case is meritless.

That leaves the question of what follows from Concert's failure thus far to bring its compulsory counterclaim in the 2007 case. According to the Seventh Circuit: "All Rule 13(a)

7

does is command that certain claims be pleaded as counterclaims. It does not specify the consequences of failing to do so. Those consequences are given by the doctrine of res judicata, including its exceptions." *Allan Block Corp.*, 512 F.3d at 917. Res judicata does not apply here, however, because the 2007 case has not reached a final judgment. *See Amcast Indus. Corp. v. Detrex Corp.*, 45 F.3d 155, 158 (7th Cir. 1995) ("the black-letter rule is that the doctrine of res judicata requires a final judgment"). Where, as here, "a court becomes aware that an action on its docket involves a claim that should be a compulsory counterclaim in another pending federal suit," the "ideal" course of action is to "stay [the] proceedings" or "dismiss the claim with leave to plead it in the prior action." 6 Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1418, at 165-67 (3d ed. 2010).

Under the circumstances of this case, where Concert sat for an extended period during the 2007 case on its insurance fraud claim as it pertains to the July 2006 letter, it is appropriate to stay that portion of the claim without prejudice to Concert moving under Rule 15(a) to assert it as a counterclaim in the 2007 case. *See Inforizons, Inc. v. VED Software Servs., Inc.*, 204 F.R.D. 116, 120 (N.D. Ill. 2001) (noting under analogous circumstances that the Seventh Circuit prefers staying rather than dismissing duplicative litigation) (citing cases); *cf. Southern Constr. Co. v. Pickard*, 371 U.S. 57, 60 (1962) (observing that Rule 13(a) "was particularly directed against one who failed to assert a counterclaim in one action and then instituted a second action in which that counterclaim became the basis of the complaint"). If Concert's alleged fraud claim against Killian arising from the July 2006 letter should be litigated anywhere, it should be litigated in the 2007 case. The court of course makes no promises or projections as to how any Rule 15(a) motion will be resolved in that case.

### B. Statements During the 2007 Case

Neither the statute of limitations nor Rule 13(a) bar (at least at the pleading stage) the portion of Concert's insurance fraud claim arising from Killian's alleged misrepresentations during the 2007 case that Rush had "continued to bill" him for his wife's care. That statement first appeared in a November 2008 affidavit that Killian filed in the 2007 case. No. 07 C 4755, Doc. 87 at pp. 2-3, ¶ 17. Killian later quoted the affidavit in his Seventh Circuit brief, and Killian's lawyer repeated the assertion at oral argument. *See Killian*, 742 F.3d at 661 n.25 ("Mr. Killian stated in his affidavit that the providers 'continue to bill me,' R.87 at 2, and counsel informed us both at oral argument and in response to our request for supplemental filings that Rush providers have continued to be in contact with Mr. Killian through his attorneys regarding the amounts still owed for Mrs. Killian's care."). The alleged misrepresentations to the Seventh Circuit occurred well after April 22, 2009, so the limitations bar does not apply. They also post-date by years Concert's October 2009 answer to the 2007 case's second amended complaint, so Rule 13(a) does not apply either. *See Burlington Northern R.R. Co. v. Strong*, 907 F.2d 707, 712 (7th Cir. 1990) ("Even when a counterclaim meets the 'same transaction' test, a party need not assert it as a compulsory counterclaim if it has not matured when the party serves his answer.").

Killian also argues that his statements in the 2007 case were not made "to any insurer" within the meaning of the insurance fraud statute. *See* 720 ILCS 5/17-0.5 (defining "false claim" to mean "any statement made to any insurer, purported insurer, servicing corporation, insurance broker, or insurance agent, or any agent or employee of one of those entities, and made as part of, or in support of, a claim for payment or other benefit under a policy of insurance … when the statement" either contains "false, incomplete, or misleading information" or "[c]onceals" material information). Rather, he argues, the statements were "made to a court of law." Doc. 6

9

at 4. Unfortunately, Killian's argument on this point consists only of a block quotation of the above-cited statute and a short paragraph that cites no case law.

To creditably contend on a Rule 12(b)(6) motion that the statements he made in the 2007 case fall outside the scope of the insurance fraud statute, Killian had to engage with and interpret the statutory text. Under *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938), a federal court interpreting an Illinois statute must apply the rules of statutory construction applicable under Illinois law. *See U.S. Fire Ins. Co. v. Barker Car Rental*, 132 F.3d 1153, 1156 (7th Cir. 1997) ("in ascertaining the meaning of [an Illinois statute], we must apply the same rules of statutory construction that the Supreme Court of Illinois would apply if it were faced with the same task"); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 131 F.3d 625, 628 (7th Cir. 1997) ("What federal courts in diversity cases attempt to do, where statutory interpretation remains open, is to make a studied effort to determine how a state's highest court would interpret the law in question."). It appears that no Illinois court has faced the precise issue presented here—whether statements made to a court can also be deemed under the insurance fraud statute to have been directed to an insurer who was a party to the case—so to properly brief the issue, Killian had to apply the rules of construction established by Illinois courts. Killian's initial brief, however, did no such thing; it did not even cite any cases setting forth those rules of construction, let alone apply them to the pertinent statutory text.

When faced with an ambiguity in a particular statute, Illinois courts often look to decisions interpreting a closely related statute—yet Killian neither cited this canon nor brought to the court's attention any closely related statutes or precedents interpreting those statutes. *See DeLuna v. Burciaga*, 857 N.E.2d 229, 236 (Ill. 2005) ("It is appropriate statutory construction to consider similar and related enactments, though not strictly *in pari materia*. We must presume

that several statutes relating to the same subject are governed by one spirit and a single policy, and that the legislature intended the several statutes to be consistent and harmonious.") (citations omitted). Illinois courts also look to the interpretations given to analogous statutes enacted by other States—but again, Killian neither cited this canon nor brought to the court's attention any cases from other States interpreting such statutes. *See Ill.-Ind. Cable Television Ass'n v. Ill. Commerce Comm'n*, 302 N.E.2d 334, 336 (Ill. 1973) ("The question of whether the words 'telephone or telegraph' as used in the statute can encompass cable television is one of first impression in this State. Similar statutes, however, have been interpreted by the highest courts in other States."); *Am. Serv. Ins. Co. v. Pasalka*, 842 N.E.2d 1219, 1228 (Ill. App. 2006) ("While there is no case in Illinois directly addressing this issue, courts in other states have issued decisions consistent with our view."); *Urban v. Loham*, 592 N.E.292, 295 (Ill. App. 1992) ("In construing an Illinois statute, decisions of other states construing similar laws are entitled to respect and consideration."). Killian might have but did not invoke the canon that "[w]hen [a federal court is] faced with two opposing and equally plausible interpretations of state law, [the court] generally choose[s] the narrower interpretation which restricts liability, rather than the more expansive interpretation which creates substantially more liability." *Home Valu, Inc. v. Pep Boys–Manny, Moe & Jack of Del., Inc.*, 213 F.3d 960, 963 (7th Cir. 2000). Killian did rely on Illinois's absolute litigation privilege to urge its more restrictive interpretation of the insurance fraud statute, Doc. 36 at 4, but that argument was first made in his reply brief, and an argument advanced for the first time in a reply brief is forfeited. *See Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009) ("the district court is entitled to find that an argument raised for the first time in a reply brief is forfeited").

In *Judge v. Quinn*, 612 F.3d 537 (7th Cir. 2010), the Seventh Circuit stated: "We have made clear in the past that it is not the obligation of this court to research and construct legal arguments open to parties, especially when they are represented by counsel, and we have warned that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." *Id.* at 557 (internal quotation marks and alterations omitted). The same principle applies in the district court. *See Batson v. Live Nation Entm't, Inc.*, 746 F.3d 827, 833 (7th Cir. 2014) ("as the district court found, the musical diversity argument was forfeited because it was perfunctory and underdeveloped"). By presenting a perfunctory and undeveloped argument on the question whether statements made in court filings or at oral argument can fall within the scope of the insurance fraud statute, Killian forfeited the issue. Killian is free to renew his attack on Killian's claim at any appropriate juncture in this case.

## Conclusion

Killian's motion to dismiss is denied. However, as it relates to the July 2006 letter, Concert's insurance fraud claim is stayed without prejudice to Concert moving under Rule 15(a) to assert that portion of its claim as a counterclaim in the 2007 case. Killian shall answer Concert's complaint, except as it pertains to the July 2006 letter, by March 19, 2015.

February 26, 2015

United States District Judge